**Marshall D. DAUGHERTY, and Debra Denise Daugherty, Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. 00–CV–1037–EA(J).**

United States District Court, N.D. Oklahoma.

July 15, 2002.

Roland V. Funk, Riggs, Abney, Neal Turpen, Orbison & Lewis, Tulsa, OK, Scott B. Wood, Brian E. Dittrich, Jason Allen Robertson, Erik Steven Houghton, Whitten, McGuire, Terry & Roselius, Tulsa, OK, for plaintiffs.

Scott Woodward, Cathryn Dawn McClanahan, United States Attorney, Tulsa, OK, Paul F. Figley, Marie Louise Hagen, Stuart Schiffer, U.S. Dept. of Justice, Torts Branch, Civil Division, Washington, DC, for Defendants.

### ORDER

EAGAN, District Judge.

This matter comes before the Court on the Report and Recommendation (Dkt. # 28) of the United States Magistrate Judge. This action was brought by a retired Navy commander and his wife against the United States, two individual defendants, and two agencies of the United States, seeking compensatory damages and equitable relief under state tort law, the Federal Tort Claims Act ("FTCA"), the Victims of Crimes Act, the United States Constitution, and the Administration Procedures Act ("APA"). Plaintiffs essentially challenge the command authority of the individual defendants and actions taken by Captain Peter Toennies, in particular, with respect to an investigation of plaintiff, Commander Marshall D. Daugherty, and charges against Commander Daugherty that were ultimately resolved in his favor. Plaintiffs allege that Captain Toennies issued several orders pertaining to command authority, duty assignments, and disciplinary proceedings which directly harmed them.

The magistrate judge recommended that the United States' motion to substitute itself for individual defendants Rear Admiral Raymond Smith and Captain Toennies (Dkt. # 13–1)[1] and for dismissal of the claims pled against: Rear Admiral Smith and Captain Toennies (Dkt. # 13–2) be denied; the United States' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim (Dkt. # 14–1) be granted as to all claims except plaintiff's claim under the APA; and the motions to dismiss filed by Rear Admiral Smith and Captain Toennies for lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and failure to state a claim (Dkt. # 14–2) be granted. As for plaintiff's APA claim, the magistrate judge recommended that the motion be denied. The parties filed timely objections pursuant to 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b). Accordingly, the Court has conducted a *de novo* review.

 The Court agrees with the magistrate judge's assessment of the motions

---

1. Plaintiffs have also named as defendants William Cohen and Richard Danzig, respectively, as the Secretary of the Department of the Navy. However, plaintiffs named them in their (indeed, Cohen and Danzig have been replaced since the filing of the Complaint). Plaintiffs' do not attempt to hold them personally liable; thus, the Court's references to the "individual defendants" herein are references to Rear Admiral Smith and Captain Toennies.

to dismiss filed by the individual defendants. The magistrate judge conducted a thorough analysis of traditional minimum contacts analysis under the Fourteenth Amendment to determine that the Court lacks in personam jurisdiction over the individual defendants. There are no allegations in the Complaint which establish that the individual defendants purposefully availed themselves of the privilege of conducting activities within Oklahoma. Nor is venue appropriate in this district pursuant to 28 U.S.C. § 1391(b). The criminal statute relied upon by plaintiffs, 18 U.S.C. § 1513, does not apply to this civil action. Further, plaintiffs have failed to state an APA claim against the individual defendants because a court cannot grant relief against an individual under the APA, *see* 5 U.S.C. §§ 702, 704, 706, and plaintiffs' *Bivens* claims against the individual defendants are barred by the *Feres* doctrine, see *Chappell v. Wallace*, 462 U.S. 296, 298–99, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).[2]

▮ The Court's conclusion that dismissal is appropriate as to the individual defendants essentially renders the United States' motion to substitute moot. Nonetheless, the Court finds the arguments of the United States' persuasive in that substitution should be granted. A suit against the United States is the exclusive remedy for person with claims arising under state law for damages resulting from the actions of federal employees taken within the scope of their office or employment. 28 U.S.C. § 2679(b)(1). The certification of the Attorney General's designee is *prima facie* evidence that the individual defendants were acting within their scope of employment, *see Richman v. Straley*, 48 F.3d 1139, 1145 (10th Cir.1995), and plaintiffs were unable to meet their burden to show that the individual defendants were not acting within their scope of employment when they took the actions of which plaintiffs complain.

▮ The magistrate judge correctly cited to *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995), to explain that certifications are subject to judicial review. However, as defendants point out in their objection, the weight of authority post-*Lamagno* indicates that the certification continues to shift the burden to plaintiffs to show that the employee was not acting within the scope of employment.[3] In addition to the certification, the United States has independently shown, in its objection, that the individual defendants were acting within the scope of their employment as Naval officers and, indeed, plaintiffs' allegations support that determination. The Court finds that substitution is appropriate.

▮ The Court also concludes that the United States' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim (Dkt.# 14–1) be granted as to all claims, including plaintiff's

---

2. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), recognizes an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. The doctrine of *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950), precludes governmental FTCA liability for injuries to servicemen resulting from activity "incident to service."

3. *See Singleton v. United States*, 277 F.3d 864, 871 (6th Cir.2002); *Maron v. United States*, 126 F.3d 317, 323 (4th Cir.1997); *Rogers v. Management Technology*, 123 F.3d 34, 37 (1st Cir.1997); *Lawson v. United States*, 103 F.3d 59, 60 (8th Cir.1996); *Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir.1996); *see also Clamor v. United States*, 240 F.3d 1215, 1219 (9th Cir.2001) (Tallman, J., dissenting); *Brumfield v. Sanders*, 232 F.3d 376, 379 (3rd Cir.2000); *RMI Titanium Co., v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir.1996); *Taboas v. Mlynczak*, 149 F.3d 576, 579 n. 1 (7th Cir.1998).

claim under the APA. As set forth more fully in the Report and Recommendation, plaintiffs' claims against the Department of Defense and the Department of the Navy are, in fact, claims against the United States, and, absent waiver, sovereign immunity shields the United States and its agencies from suit. *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). The United States has not waived its immunity; the FTCA does not provide for relief directly against the departments, agencies or instrumentalities of the United States, *see* 28 U.S.C. §§ 2674, 2679(a); and constitutional tort claims under *Bivens* are not actionable directly against agencies of the United States, *Meyer*, 510 U.S. at 486, 114 S.Ct. 996.

■ Plaintiffs' claims directly against United States also fail. Again, plaintiffs cannot state a *Bivens* claim directly against the United States. *See Meyer*, 510 U.S. at 485, 114 S.Ct. 996. As the magistrate judge points out, plaintiff's claim for restitution under the Victims of Crime Act borders on the frivolous. The right to restitution in 42 U.S.C. § 10606 appears in the context of sentencing a convicted criminal under 18 U.S.C. §§ 3663, 3664. There is no allegation of ongoing or contemplated criminal prosecution in this matter.

■ Plaintiffs' FTCA claims against the United States are barred by the *Feres* doctrine because Commander Daugherty is claiming injuries resulting from activity "incident to service." 340 U.S. at 146, 71 S.Ct. 153; *see also United States v. Johnson*, 481 U.S. 681, 686, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987).[4] As the

magistrate judge stated, "all relevant activity in this case is military in nature . . . ." Report and Recommendation, Dkt. # 28, at 1305. Whether Captain Toennies had any legal authority to issue orders affecting Commander Daugherty is not material to this determination. *Cf. United States v. Stanley*, 483 U.S. 669, 680–81, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (the officer-subordinate relationship between a plaintiff and the alleged tort feasor is irrelevant for purposes of a *Feres* inquiry).[5]

■ Plaintiffs' Complaint also fails to state a claim for relief under the FTCA. All of plaintiffs' claims are premised on an alleged violation of federal law: plaintiffs argue that Captain Toennies violated provisions of Title 10 of the United States Code when he took various actions affecting Commander Daugherty and his wife. Yet, "the FTCA's waiver of sovereign, immunity is limited to conduct for which a private person could be held liable under state tort law, *see* 28 U.S.C. §§ 1346(b), 2674 . . . ." *United States v. Agronics*, 164 F.3d 1343, 1345 (10th Cir.1999). No private analog exists for Captain Toennies' alleged improper exercise of command authority over Commander Daugherty in violation of federal law.

The magistrate judge recommended that the United States' motion to dismiss be denied as to plaintiffs' APA claims because (a) the parties had failed to address the factors articulated in *Mindes v. Seaman*, 453 F.2d 197, 201–202 (5th Cir.1971), which were adopted by the Tenth Circuit in, *Lindenau v. Alexander*, 663 F.2d 68 (10th Cir.1981), and (b) the magistrate judge

---

4. Mrs. Daugherty's FTCA claims are also barred by *Feres* because they have their genesis in Commander Daugherty's claims. *See Feres*, 340 U.S. at 136–38, 71 S.Ct. 153 (widows); *Johnson*, 481 U.S. at 683–84, 107 S.Ct. 2063 (widow); *Harten v. Coons*, 502 F.2d 1363, 1365 (10th Cir.1974) (wife).

5. Commander Daugherty claims that he was not under Captain Toennies' authority at the time of his injuries because he was not performing service in the Navy. Instead, he asserts that he was on active duty conducting special operations missions in Europe under the exclusive command of the U.S. Commander–in–Chief, Europe.

was not persuaded that, if plaintiffs could establish that the actions of which they complain were justiciable under the *Mindes* factors, plaintiffs would be unable to establish that the actions were final agency actions pursuant to the provisions of 5 U.S.C. §§ 551(13), 702, 704. Accordingly, the magistrate judge directed the parties to address the *Mindes* factors and the justiciability of plaintiffs' APA claims in their objections to the Report and Recommendation. The Court now has the benefit of these arguments, and finds that the plaintiffs' APA claims are not justiciable.

 Plaintiffs' APA claims are premised on plaintiffs' request that the Court order the setting aside and expungement from Commander Daugherty's personnel record all actions, findings, and conclusions resulting from Captain Toennies' alleged unlawful exercise of command authority over him. Under the first step of the two-step justiciability test set forth in *Mindes*, "[a] court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." 453 F.2d at 200. If these threshold requirements are met, the court "must examine the substance of the allegations in light of the policy reasons behind nonreview of military matters," weighing the following four factors: (1) the "nature and strength of the plaintiff's challenge to the military determination"; (2) the "potential injury to the plaintiff if review is refused"; (3) the "type and degree of anticipated interference with the military function"; and the "extent to which the exercise of military expertise and discretion is involved." *Id.* at 201.

Plaintiffs have alleged that Captain Toennies violated the plaintiffs' fundamental rights to equal protection, due process, and liberty under the Fifth Amendment by issuing orders and imposing sanctions in the exercise of command functions over the plaintiffs, thereby subjecting them to void orders, sanctions, and unofficial proceedings. They also claim that defendants violated 10 U.S.C. §§ 162, 164, 167, 5013, and 5033. As the magistrate judge and the United States recognize, all of the plaintiffs' arguments are promised on the allegation that the Goldwater–Nichols Department of Defense Reorganization Act of 1986, 10 U.S.C. §§ 161–68, (the "Act"), divested the Navy of command authority over Commander Daugherty. This allegation is meritless.

The Act provides for the establishment of unified and specified combatant Commands to perform military missions. 10 U.S.C. § 161(a)(1). Forces are to be assigned to these joint combatant commands by the Secretaries of the military departments, 10 U.S.C. § 162(a), each of whom is "responsible for the administration and support of forces assigned by him to a combatant command." 10 U.S.C. § 165(b). The plain language of the Act confirms that the Secretary of the Navy remains responsible for administration of forces assigned to combatant commands. Thus, plaintiffs' statutory and constitutional claims lack merit. The first *Mindes* factor weighs against review of plaintiffs' APA claim. *See Wenger v. Monroe*, 282 F.3d 1068, 1075 (9th Cir.2002).

Under the first step of the *Mindes* test, the Court must also decline to review internal military affairs where the plaintiff has not exhausted "available intraservice corrective measures." 453 F.2d at 200. Defendants argue that "the plaintiffs never presented their request for correction of Naval records to the Secretary of the Navy by petition to the Board for Correction of Naval Records ('BCNR'), which has

statutory authority to correct military records or remove an injustice." 10 U.S.C. § 1552(a)(1); *see also* 32 C.F.R. §§ 723.1–723.11. Yet, as the magistrate judge points out, defendants have not shown that the statute or regulations establishing the Board expressly require administrative exhaustion prior to seeking judicial review.

 Exhaustion of remedies is not required prior to seeking judicial review under the APA when neither the relevant statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review and the administrative action is made inoperative pending that review. *Darby v. Cisneros,* 509 U.S. 137, 154, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). The Court is not prepared to find that the *Mindes* exhaustion requirement is no longer applicable after *Darby,* especially since *Darby* did not involve a military matter. However, in this instance, defendants have not shown that the relevant statute or agency rules specifically mandate exhaustion prior to judicial review. Hence, plaintiffs were not required to exhaust their available remedy prior to seeking judicial review under the APA.

Nonetheless, plaintiffs' APA claim fails when the Court evaluates the four factors in the second step of the *Mindes* test. As discussed above, the nature of the plaintiff's challenge to the military determination is found in the Goldwater–Nichols Act, and the strength of that challenge is exceedingly weak, given the plain language of the statute. The second factor, "potential injury to the plaintiff if review is refused," also weighs against justiciability. Commander Daugherty claims that the records he seeks to have expunged damaged his reputation, causing him to be passed over for a promotion that would have allowed him to retire at the grade of captain, and affected his ability to obtain desired employment in the future. Yet, he has been medically retired with an honorable discharge since February 1997. The charges against him were ultimately resolved in his favor. The Court fails to see how any potential injury could be more than slight. Further, the Court lacks the power to order a promotion for Commander Daugherty. *Cf. Orloff v. Willoughby,* 345 U.S. 83, 90, 73 S.Ct. 534, 97 L.Ed. 842 (1953) (Courts "have never assumed . . . to control the appointing power . . . [in] military positions."); *Charette v. Walker,* 996 F.Supp. 43, 49 (D.D.C.1998) ("requests for retroactive military promotions fall 'squarely within the realm of nonjusticiable military personnel decisions.'") (citation omitted).

The third factor, the "type and degree of anticipated interference with the military function," appears to weigh in favor in justiciability at first glance. Merely expunging one serviceman's records would not seem to involve much interference. However, expungement in this instance would necessarily follow a determination by the Court that Captain Toennies unlawfully exercised command authority over Commander Daugherty. The Court's reading of the Goldwater–Nichols Act does not permit such a determination. If it did, such determination could have serious repercussions not only for the legitimacy of the Act, but for the military's command structure in general and would certainly signify a major interference with military function. Courts traditionally have been reluctant to intervene in any matter which "goes directly to the 'management' of the military and calls into question basic choices about the discipline, supervision, [and] control of a serviceman." *See United States v. Shearer,* 473 U.S. 52, 58, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985).

This reluctance is also reflected in the fourth factor, the "extent to which the exercise of military expertise and discretion is involved." For the most part, the judiciary lacks the military expertise to

interfere in the chain of command established by the armed services or to become embroiled in the minutia of military administration, discipline, and personnel decisions. In light of the policy reasons behind nonreview of military matters, the Court finds that the *Mindes* factors weigh against justiciability in this case.[6]

### *Conclusion*

For the reasons set forth above, the Report and Recommendation (Dkt. # 28) is hereby adopted in part and modified in part, as follows: the United States' motion to substitute itself for individual defendants Rear Admiral Raymond Smith and Captain Peter Toennies (Dkt. # 13–1), and for dismissal of the claims pled against Rear Admiral Smith and Captain Toennies (Dkt. # 13–2) is hereby granted; the United States' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim (Dkt. # 14–1) is hereby granted; and the motions to dismiss filed by Rear Admiral Smith and Captain Toennies for lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and failure to state a claim (Dkt. # 14–2) are hereby granted. The Objection of the plaintiff (Dkt. # 61) is overruled; the Objection of the defendant (Dkt. # 60) is sustained; and this matter is dismissed with prejudice.

### *REPORT AND RECOMMENDATION*

JOYNER, United States Magistrate Judge.

### TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1290

II. PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS, REAR ADMIRAL SMITH AND CAPTAIN TOENNIES . . . . . . . . . . . . . . . . . . . . . 1292
 A. THE SCOPE–OF–EMPLOYMENT ISSUE CANNOT BE RESOLVED AS A MATTER OF LAW ON THIS RECORD. . . . . . . . . . . . . . . . . . . . . . . 1292
 B. THE NATURE OF PLAINTIFFS' COMMON LAW TORT CLAIMS IS UNCLEAR, BUT IRRELEVANT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1294
 C. THE COURT LACKS *IN PERSONAM* JURISDICTION OVER THE INDIVIDUAL DEFENDANTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1295
 1. A Traditional Minimum Contacts Analysis Under the Fourteenth Amendment Is Appropriate With Regard to Plaintiffs' State and Federal Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1295
 2. Minimum Contacts Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1297
 D. OTHER BASES FOR DISMISSAL OF PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . 1299
 1. Plaintiffs' *Bivens* Claims Against the Individual Defendants Are Barred by the *Feres* Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1299
 2. Venue Is Not Appropriate In This District . . . . . . . . . . . . . . . . . . . . . 1299
 3. Arguments Not Addressed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1300

III. PLAINTIFFS' CLAIMS AGAINST THE FEDERAL AGENCIES, DoD and DoN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1300

IV. PLAINTIFFS' CLAIMS AGAINST THE UNITED STATES . . . . . . . . . . . . . . . . . 1301
 A. PLAINTIFFS' CANNOT BRING *BIVENS* CLAIMS AGAINST THE UNITED STATES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1301

---

**6.** Because the Court finds that plaintiffs' APA claims are nonjusticiable, it is not necessary to reach the issue of whether the actions of which plaintiffs complain are final agency actions. However, the Court notes the apparent admissions by the plaintiffs indicating that no final agency action has been taken. Complaint, ¶¶ 90, 91, 92.

 B. PLAINTIFFS' FTCA CLAIMS ........................................ 1301
 1. Commander Daugherty's FTCA CLAIMS ARE BARRED BY THE
 *FERES* DOCTRINE. ............................................ 1301
 a. *Procedural Posture of the United States' Motion to Dismiss* .... 1303
 b. *Application of Feres* ...................................... 1304
 c. *Commander Daugherty's Request that Feres be Overruled* ........ 1309
 d. *Mrs. Daugherty's FTCA Claims are Also Barred by Feres*
 *Because They Have Their Genesis In Commander*
 *Daugherty's Claims.* ...................................... 1309
 2. Plaintiffs' Complaint Fails to State a Claim for Relief Under the
 FTCA. ...................................................... 1310
 3. Other Basis for Dismissal of Plaintiffs' FTCA Claims ................ 1312
 C. PLAINTIFFS' CLAIMS UNDER THE ADMINISTRATIVE
 PROCEDURES ACT ............................................ 1312

V. PLAINTIFFS' CLAIM UNDER THE VICTIMS OF CRIME ACT ............. 1317

RECOMMENDATION ................................................ 1318

OBJECTIONS ...................................................... 1318

The following motions are now before the Court:

1. The United States' motion to substitute itself for individual defendants Rear Admiral Raymond Smith and Captain Peter Toennies, and for dismissal of the claims pled against Rear Admiral Smith and Captain Toennies, [Doc. Nos. 13–1 and 13–2];

2. The United States' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, [Doc. No. 14]; and

3. Rear Admiral Smith's and Captain Toennies' motions to dismiss for lack of personal jurisdiction, subject matter jurisdiction, improper venue, and failure to state a claim, [Doc. No. 14].

These motions were referred to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636, for a report and recommendation. Having reviewed the parties' briefs [1] and heard argument at a May 1, 2002 hearing, the undersigned offers this report and recommends that the United States' motion for substitution and to dismiss be **DENIED** (doc. nos. 13–1 and 13–2); that Rear Admiral Smith's and Captain Toennies' motions to dismiss be **GRANTED** (doc. no. 14); and that the United States' motion to dismiss be **GRANTED** as to all claims except Plaintiffs' claim under the Administrative Procedures Act as to which claim the undersigned recommends that the motion be **DENIED** (doc. no. 14).

## I. INTRODUCTION

The undersigned has necessarily reviewed Plaintiffs' complaint to resolve Defendants' various motions to dismiss. Plaintiffs' complaint is a mishmash of disjointed legal theories which fails to comply with the spirit of Fed.R.Civ.P. 8(a)(2) and 8(e)(1), which requires short, plain, simple and concise averments in a pleading. It is, therefore, exceedingly difficult based on a review of the complaint to determine exactly what types of claims Plaintiffs are pleading against which defendants, and the briefing by Plaintiffs' counsel does little to provide additional clarity. That said, the

---

**1.** The undersigned·has reviewed the following documents: 1, 13, 14, 15, 24, 25, 30, 39, 41 and 52.

undersigned gleans the following from the record.

At all relevant times, Plaintiff Marshall D. Daugherty was a Commander in the United States Navy and Plaintiff, Debra Denise Daugherty, was his wife. At all relevant times, Commander Daugherty served as Commander Naval Special Warfare Unit Ten ("NSWU10"), stationed in Rota, Spain. Commander Daugherty alleges that pursuant to Title 10 of the United States Code, his lawful chain of command was as follows: Brigadier General Michael Canavan, Commander Special Operations European Command, stationed in Germany; General Joulwan, Commander in Chief United States European Command, stationed in Germany; the Secretary of Defense; and the President of the United States.

Defendant, Peter Toennies, was at all relevant times a Captain in the United States Navy. Plaintiffs allege that Captain Toennies' lawful chain of command under Title 10 of the United States Code was as follows: Rear Admiral Raymond Smith, Commander Naval Special Warfare Command, stationed in Coronado, California; General Downing, Commander in Chief United States Special Operations Command, stationed at McDill Air Force Base in Florida; the Secretary of Defense; and the President of the United States.

Plaintiffs allege that under Title 10 of the United States Code, Captain Toennies had no lawful command authority over Commander Daugherty, and that Captain Toennies exceeded his authority under Title 10 by issuing several orders and taking actions which directly harmed them. In

particular, Plaintiffs allege that Captain Toennies improperly (a) interfered with Commander Daugherty's medical treatment, (b) denied Commander Daugherty travel and transportation allowances for himself and his family in connection with his medical treatment, (c) instituted criminal and other investigations into Commander Daugherty's activities, (d) instituted a Court–Martial against Commander Daugherty and interfered with witnesses who were to appear before the Courts–Martial, (e) filed false performance reports in Commander Daugherty's personnel file, (f) interfered with Commander Daugherty's command of NSWU10, (g) detailed Commander Daugherty to another command without official orders, and (h) prevented Commander Daugherty from seeking redress of his grievances from the Navy and the Department of Defense. *See* Doc. No. 1, ¶¶ 19 and 22.

Plaintiffs have sued Captain Toennies and certain of his superiors on the theory that these superiors failed to act to prevent Captain Toennies from exercising illegal and improper command authority over Commander Daugherty. In particular, Plaintiffs have sued the following defendants:

1. Captain Peter Toennies, Commander Naval Special Warfare Group Two, stationed in Norfolk, Virginia;

2. Rear Admiral Raymond Smith, Captain Toennies' direct superior and Commander Naval Special Warfare Command, stationed in Coronado, California;

3. The Department of the Navy ("DoN");

4. The Department of Defense ("DoD");[2] and

---

**2.** In the caption of their complaint, Plaintiffs have named William Cohen and Richard Danzig respectively as the Secretary of the Department of Defense and the Secretary of the Department of the Navy. Since the filing of their complaint, Mr. Cohen and Mr. Danzig have been replaced by Donald H. Rumsfeld

and Gordon R. England respectively. Plaintiffs name the Secretary of Defense and the Secretary of the Navy in their official capacities and they do not attempt to hold them personally liable. Consequently, pursuant to Fed.R.Civ.P. 25(d)(2), which allows a public officer sued in his official capacity to be de-

5. The United States of America.

Plaintiffs have, therefore, sued two individual defendants, two agencies of the United States and the United States itself. Plaintiffs seek compensatory and equitable relief from these Defendants under state tort law, the Federal Tort Claims Act ("FTCA"), the Victims of Crime Act, the United States Constitution, and the Administrative Procedures Act ("APA"). For the reasons discussed below, the undersigned finds that as currently pled all of Plaintiffs' claims are subject to dismissal under Fed.R.Civ.P. 12.

## II. PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS, REAR ADMIRAL SMITH AND CAPTAIN TOENNIES

Plaintiffs clearly attempt to assert *Bivens* claims against Rear Admiral Smith and Captain Toennies personally for their alleged violations of Plaintiffs' constitutional rights. *See Bivens v. Six Unknown Named Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). It also appears that Plaintiffs intend to assert common law tort claims against Rear Admiral Smith and Captain Toennies personally. The precise nature

of these common law tort claims is, however, not at all clear from the record.[3]

## A. THE SCOPE-OF-EMPLOYMENT ISSUE CANNOT BE RESOLVED AS A MATTER OF LAW ON THIS RECORD.

The United States filed a motion to substitute itself for Defendants Smith and Toennies as to all of Plaintiffs' common law tort claims and for dismissal of all common law tort claims pled against the individual defendants. The United States premises its motion on a certification prepared by Jeffrey Axelrad, Director, Torts Branch, Civil Division, United States Department of Justice. Pursuant to 28 U.S.C. § 2679(d), Mr. Axelrad has certified that the individual defendants "were acting within the scope of their offices as employees of the United States at the time of the conduct alleged in the Complaint." Doc. No. 13, Exhibit 1.[4]

Mr. Axelrad indicates in his "certification" that he is making his certification pursuant to § 2679(d)(2). That subsection, however, applies to actions filed initially in a state court and provides a basis for removal upon certification by the Attorney

scribed as a party by his title rather than his name, the undersigned finds that William Cohen and Richard Danzig should be dropped as named parties and Plaintiffs' claims should proceed against the Secretary of Defense and the Secretary of the Navy without reference to the current secretary's names.

3. Plaintiffs' complaint could also be construed as asserting claims against Rear Admiral Smith and Captain Toennies under the Administrative Procedures Act, 5 U.S.C. §§ 701–706. *See* Doc. No. 1, pp. 24–27. Under the APA, however, the only type of relief which a court can grant is relief against an agency of the federal government. A court cannot grant relief against an individual under the APA. *See* 5 U.S.C. §§ 702, 704 and 706. Consequently, to the extent Plaintiffs' complaint can be read as asserting APA claims against Rear Admiral Smith or Captain Toennies, the undersigned

recommends dismissal for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6).

4. The FTCA's definition section states that "in the case of a member of the military or naval forces of the United States," acting within the scope of employment means "acting in line of duty." 28 U.S.C. § 2671. Nowhere has the Attorney General certified that the individual defendants in this case were "acting in line of duty." The parties have not addressed this issue and they have not addressed whether a "line of duty" inquiry is distinct from a "scope of employment" inquiry. Consequently, the undersigned will not determine whether the Attorney's General certification in this case is inadequate because it fails to specifically address whether the individual defendants were "acting in line of duty."

General that the defendant was acting within the scope of his federal employment. Mr. Axelrad's certification is actually made pursuant to § 2679(d)(1), which provides as follows:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). The United States Supreme Court explains the effect of this certification as follows:

> When a federal employee is sued for a wrongful or negligent act, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly known as the Westfall Act) empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose ...." 28 U.S.C. § 2679(d)(1). Upon certification, the employee is dismissed from the action and the United States is substituted as defendant. The case then falls under the governance of the Federal Tort Claims Act (FTCA), ch. 753, 60 Stat. 812, 842. Generally, such cases unfold much as cases do against other employers who concede *respondeat superior* liability. If, however, an exception to the FTCA shields the United States from suit, the plaintiff may be left without a tort action against any party.

*Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419–20, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995).

Based on Mr. Axelrad's certification, the United States argues that, with regard to any conduct which would support a common law tort claim, the individual defendants were "acting within the scope of their offices" such that any common law tort claims are in fact claims against the United States under the FTCA, and not claims against the individual defendants by virtue of § 2679. Later, for various reasons that do not relate directly to the merits, the United States argues that all FTCA claims against the United States should be dismissed. Thus, the United States also does not address the precise nature of the common law tort claims Plaintiffs are attempting to assert against the individual defendants. Rather, the United States argues that all such claims are really claims against the United States and all claims against the United States should be dismissed whatever they are.

Plaintiffs respond by attacking Mr. Axelrad's certification. Plaintiffs argue that Mr. Axelrad's certification is not definitive on the scope-of-employment issue. Plaintiffs admit that some of the conduct alleged in their complaint was within the scope of the individual defendants' employment (i.e., conduct which might support a negligence action), but argue that their complaint also alleges conduct which would constitute an intentional tort, which conduct would generally not be within the scope of the individual defendants' employment. Ultimately, Plaintiffs argue that whether all of the conduct alleged in their complaint is within the scope of the individual defendants' employment is a factual issue, and that the scope-of-employment issue cannot be decided as a matter of law on a motion to dismiss.

Ordinarily, scope-of-employment certifications occasion no contest. While the certification relieves the federal employee

of responsibility, the plaintiff is still confronted with a financially reliable defendant: the United States. In this case, however, substitution of the United States could cause the demise of the action because the United States asserts various non-merits arguments in support of dismissal of all FTCA claims pled against it. This is precisely the situation the United States Supreme Court addressed in *Lamagno*. *See* 515 U.S. at 422, 115 S.Ct. 2227. At issue in *Lamagno* was whether the Attorney General's § 2679 certification is definitive, or whether that certification is itself subject to judicial review. The Supreme Court ultimately held in *Lamagno* that plaintiffs may "present to the District Court their objections to the Attorney General's scope-of-employment certification . . . ." *Id.* at 436–37, 115 S.Ct. 2227. The Attorney General's certification is, therefore, subject to judicial review in this case.[5] Consequently, the Attorney General's certification cannot settle the scope-of-employment issue as a matter of law for purposes of the United States' motion to dismiss. Plaintiffs may be able to present a set of facts which establishes that some of the individual defendants' conduct was not within the scope of their federal employment.

For the foregoing. reasons, the undersigned recommends that the United States' motion to substitute itself for Admiral Smith and Captain Toennies be **DENIED,** and that the United States' motion to dismiss the common law tort claims pled against Admiral Smith and Captain Toennies be DENIED. [Doc. Nos. 13–1 and 13–2].

## B. THE NATURE OF PLAINTIFFS' COMMON LAW TORT CLAIMS IS UNCLEAR, BUT IRRELEVANT.

Plaintiffs appear to be asserting both unintentional and intentional tort claims against the individual defendants. The allegations in the complaint might support a negligence theory, a false imprisonment theory, an intentional infliction of emotional distress theory, a fraud theory, or a defamation theory. Plaintiffs' complaint, however, never directly identifies the theory of recovery on which their common law tort claims are based, and they do not identify on which state's law they rely as the basis for their common law tort claims. Nevertheless, the undersigned finds that the Court need not resolve the precise nature of Plaintiffs' tort claims because, as will be discussed below, the undersigned finds that Plaintiffs have failed to allege an adequate basis for the Court's exercise of *in personam* jurisdiction over the individual defendants as to any claim.

---

**5.** The United States cites several cases in its reply brief for the proposition that while the Attorney General's certification is subject to review under *Lamagno*, the Attorney General's certification is *"prima facie"* evidence that the employee's conduct occurred within the scope of his employment, and that the burden is on the plaintiff to establish otherwise. *See* Doc. No. 39, pp. 19–20. All of these cases were, however, decided before the United States Supreme Court decided *Lamagno*. *See Richman v. Straley*, 48 F.3d 1139, 1145 (10th Cir.1995); and *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir.1990), *op. amended,* 924 F.2d 1555 (11th Cir.1991). The undersigned finds nothing in the Supreme Court's opinion in *Lamagno* which supports the *prima-facie* evidence approach endorsed by *Richman* and *Lehtinen*. There is no indication by the Supreme Court in *Lamagno* that the Attorney General's opinion is entitled to any special deference, especially given the conflict of interest which arises in cases like this and which was identified by the Supreme Court as a reason why judicial review of the Attorney General's certification is necessary.

## C. THE COURT LACKS *IN PERSONAM* JURISDICTION OVER THE INDIVIDUAL DEFENDANTS.

### 1. A Traditional Minimum Contacts Analysis Under the Fourteenth Amendment Is Appropriate With Regard to Plaintiffs' State and Federal Claims.

■ The appropriate exercise of a court's jurisdiction over one's person has two dimensions: a constitutional dimension and a procedural dimension. Not only must the Constitution's requirements be satisfied, but certain procedural requirements must also be satisfied before a court may exercise personal jurisdiction over a defendant. The United States Supreme Court explains as follows:

> [B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987).

The procedural aspects of service of process in federal court are governed by Fed. R.Civ.P. 4. Pursuant to Rule 4(e) and 4(k), federal courts normally look either to a federal statute authorizing nationwide service of process or to the long-arm statute of the State in which the court sits to determine whether a defendant not present within the territorial jurisdiction of the court is amenable to service of process. The individual defendants are not within the territorial jurisdiction of this Court, and Plaintiffs have identified no federal statute which authorizes service of process, nationwide or otherwise, on the individual defendants. Plaintiffs must, therefore, be relying on Oklahoma's long-arm statute to effect service of process in this case.

The current Oklahoma long-arm statute provides that an Oklahoma court "may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." *See* 12 Okla. Stat. § 2004(F). Thus, the only analysis under the Oklahoma long-arm statute is whether the court's exercise of personal jurisdiction would be consistent with the constitutional requirements of due process. *See Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1416–17 (10th Cir.1988).

The United States Supreme Court has held that individuals have a liberty interest, protected by the Constitution's due process clauses, in not being subject to the binding judgments of a forum with which the individual has established no meaningful contacts, ties or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Omni,* 484 U.S. at 104, 108 S.Ct. 404. The Constitution contains two due process clauses: one in the Fifth Amendment, which applies generally to the federal government; and one in the Fourteenth Amendment, which applies generally to the States. There has been much scholarly debate about which of these two clauses applies to claims brought under federal law, as opposed to state law claims brought in diversity cases, and whether the analysis under these two clauses is distinct (e.g., must a defendant against whom a federal claim is asserted have sufficient contacts with the forum, or need the defendant only have sufficient contacts with the Nation as a whole). *See* Wright & Miller, *Federal Practice and Procedure: Civil 3d,* § 1068.1 (2002).

As discussed above, Plaintiffs are attempting to assert claims against the indi-

vidual defendants which arise under federal law (e.g., *Bivens*) and claims which arise under state law (e.g., common law torts). This has led to some confusion by the parties as to what constitutional standard should be used to evaluate the propriety of the Court's exercise of personal jurisdiction over the individual defendants: the traditional minimum contacts analysis under the Fourteenth Amendment and *International Shoe* or a distinct analysis under the Fifth Amendment. This issue becomes most acute when a plaintiff asserts a federal claim under a statute which authorizes nationwide service of process. In that instance, should the Fourteenth Amendment apply at all, and, if not, should the analysis focus on contacts with the forum or contacts with the Nation. The Tenth Circuit faced just such an issue in *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206 (10th Cir.2000).

In *Peay,* the Tenth Circuit held that the Fifth Amendment applied to the personal jurisdiction inquiry in that case because the claim at issue was a federal ERISA claim for which Congress had provided nationwide service of process. *Peay,* 205 F.3d at 1210. The Tenth Circuit rejected a straight national contacts test and held that the Fourteenth Amendment's requirement that the forum selected be "fair and reasonable" is also part of a Fifth Amendment personal jurisdiction analysis. Given, however, that the claim involved was a federal claim with nationwide service of process, the Court held that contacts with the forum were not all that a court should look at. The focus must be on whether the defendant's liberty interest would in fact be violated by having to litigate regarding a federal claim in the particular federal forum chosen by the plaintiff. Courts should, therefore, also look at the interstate character of the defendant's conduct, the defendant's access to counsel in the forum, defendant's distance from the forum, the probable situs of discovery, the

extent to which the defendant's activities routinely have an impact beyond the borders of his domicile, and judicial economy. *Id.* at 1212.

■ As discussed above, Plaintiffs are asserting federal claims against the individual defendants. Plaintiffs have not, however, identified any federal statute which authorizes nationwide service of process. Rather, they are necessarily relying on Oklahoma's long-arm statute under Rule 4(k)(1)(A) to support this Court's exercise of personal jurisdiction over the individual defendants. The Tenth Circuit's decision in *Peay* is, therefore, not directly on point. The question becomes, therefore, when a federal court employs a state long-arm statute in a federal question case, must it also use the traditional Fourteenth Amendment analysis under *International Shoe* or must it use the Fifth Amendment analysis adopted by the Tenth Circuit in *Peay?* The Tenth Circuit has not answered this question in a published opinion. However, the Tenth Circuit in an unpublished decision and district courts in the Tenth Circuit have held, and Professors Wright and Miller have suggested, that in federal question cases where Congress has not authorized nationwide service of process, and a state long-arm statute is borrowed, a traditional Fourteenth Amendment analysis must be used to determine whether application of the state's long-arm statute is constitutionally permissible. *See* Wright and Miller, *Federal Practice and Procedure: Civil 3d,* § 1068.1, pp. 615–618 (2002); *Springer v. Balough,* No. 00–5071, 2000 WL 1616246, at *1 (10th Cir. Oct.30, 2000); *Rainy Day Books, Inc. v. Rainy Day Books & Cafe, L.L.C.,* 186 F.Supp.2d 1158, 1161 (D.Kan.2002); and *Scherer v. Curators of the University of Missouri and Law School Admission Council,* 152 F.Supp.2d 1278, 1281–82 (D.Kan.2001). Thus, the undersigned finds that a tradi-

tional Fourteenth Amendment minimum contacts analysis should be applied to determine whether the Court can exercise personal jurisdiction over the individual defendants with regard to Plaintiffs' state and federal claims.

## 2. Minimum Contacts Analysis

When a defendant challenges a court's personal jurisdiction under Fed. R.Civ.P. 12(b)(2), the plaintiff bears the burden of establishing that the Court's exercise of personal jurisdiction over the defendant is proper. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir.1998). When a court rules on a Rule 12(b)(2) motion without holding an evidentiary hearing, as in this case, the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion to dismiss. *Id.* The plaintiff may make this *prima facie* showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. For purposes of ruling on a Rule 12(b)(2) motion, the allegations in the plaintiff's complaint will be taken as true unless contradicted by defendant's evidentiary materials. If the plaintiff meets the defendant's evidence with her own evidence, then a question of fact will arise, and all factual disputes are to be resolved in the plaintiff's favor at the motion to dismiss stage. In order to defeat a plaintiff's *prima facie* showing of personal jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable. *Id. See also Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1417 (10th Cir.1988).

The parties have not submitted any evidentiary material in connection with the individual defendants' Rule 12(b)(2) motions. The undersigned will, therefore, accept the allegations in Plaintiffs' complaint as true. Based on a review of the allega-tions in Plaintiffs' complaint, the undersigned finds that Plaintiffs have failed to make a *prima facie* showing that the individual defendants are subject to this Court's jurisdiction.

A federal court may, consistent with the due process clause of the Fourteenth Amendment, exercise personal jurisdiction over a nonresident defendant so long as there exist minimum contacts between the defendant and the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The defendant's contacts with the forum state must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* at 292, 100 S.Ct. 559. The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has purposefully availed himself of the privilege of conducting activities within the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See generally, Rambo,* 839 F.2d at 1417.

Personal jurisdiction over a defendant may be either general or specific. If a defendant has purposefully directed her activities at residents of the forum, and the injuries alleged arise out of or relate to those activities, a court may exercise "specific" jurisdiction over the defendant. In contrast, when the suit does not arise from or relate to the defendant's contacts with the forum, a court may exercise "general" jurisdiction over the defendant based on the defendant's presence in or accumulated contacts with the forum. *Rudzewicz,* 471 U.S. at 473 n. 15, 105 S.Ct. 2174; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8 &

9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, because general jurisdiction is not related to the events giving rise to the suit, a more stringent minimum contacts test is used, requiring the plaintiff to demonstrate the defendant's "continuous and systematic" contacts with the forum. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868. *See generally OMI,* 149 F.3d at 1090–91; and *Rambo,* 839 F.2d at 1418. Thus, to establish general jurisdiction, the defendant must conduct substantial and continuous activity within the forum state. *Soma Medical International v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir. 1999).

Based on the allegations in Plaintiffs' complaint, the individual defendants have no contacts with Oklahoma, the forum, let alone minimum contacts. During the relevant period, Rear Admiral Smith was located in California; Captain Toennies was located in Virginia; and Plaintiffs were located in Spain. Plaintiffs did travel from Spain to the United States so that Commander Daugherty could receive medical treatment, but there is no indication that he received treatment in Oklahoma. There are, therefore, no allegations in Plaintiffs' complaint which establish that the individual defendants purposefully availed themselves of the privilege of conducting activities within Oklahoma.

Plaintiffs' only argument is that the Navy has "well-established offices in all 50 states comprising the United States," and that the individual defendants "believed their authority to extend to all the states ... in which an office of the Department of the Navy was established" and "expect-ed residents of all the states ... who were members of the Navy to be subject to their authority." Doc. No. 24, p. 18. Initially, the undersigned notes that none of these factual assertions are alleged in the complaint or supported by any evidentiary material.[6] In any event, the undersigned finds that even if Plaintiffs' arguments are accepted as fact, all Plaintiffs have identified with regard to the individual defendants is an alleged inchoate power to direct orders to Navy personnel in Oklahoma. Plaintiffs have not alleged any facts which establish that the individual defendants ever in fact directed any orders, or any other activity, toward Oklahoma. Furthermore, the fact that the Navy may have installations in Oklahoma, a fact not in evidence, would be relevant to establish jurisdiction over the Navy or the United States, but not against Rear Admiral Smith and Captain Toennies, who Plaintiffs allege were acting outside the scope of their employment for the Navy as to those claims pled against them personally.

The undersigned finds that Plaintiffs have failed to present a *prima facie* case that the individual defendants had any contacts with Oklahoma. This Court may not, therefore, exercise personal jurisdiction over the individual defendants consistent with the due process clause of the Fourteenth Amendment. Consequently, the undersigned recommends that Rear Admiral Smith's and Captain Toennies' Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction be **GRANTED.**

---

**6.** Also, the undersigned must note that Plaintiffs' argument flies in the face of their general theory of the case: that under Title 10 there are clearly defined chains of command which prevent officers, regardless of their rank, from directing orders to lower echelon personnel unless that personnel is within the officer's specified chain of command under Title 10. It is, therefore, disingenuous for Plaintiffs to now argue that the individual defendants expected that all members of the Navy in Oklahoma were subject to their command authority.

## D. OTHER BASES FOR DISMISSAL OF PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

### 1. Plaintiffs' *Bivens* Claims Against the Individual Defendants Are Barred by the *Feres* Doctrine.

In *Feres*, the Supreme Court held that when it enacted the FTCA Congress did not intend for the FTCA's remedies to apply to a person who sustained an injury incident to military service, even if that injury would otherwise be actionable under the FTCA. In *Chappell*, the Supreme Court held that for reasons similar to those articulated in *Feres*, *Bivens* claims also could not be brought by military personnel. In *Stanley*, the Court held that the immunity from suit granted to the United States in *Feres* and the immunity from suit granted to federal officials in *Chappell* should be coextensive, and should be informed by the concerns underpinning *Feres*.[7] As discussed below in Part IV(B)(1), the undersigned finds that Plain-

tiffs' FTCA claims are barred by *Feres*. Thus, pursuant to *Chappell* and *Stanley*, Plaintiffs' *Bivens* claims against the individual defendants are also barred by *Feres*. Consequently, the undersigned also recommends that Rear Admiral Smith's and Captain Toennies' Rule 12(b)(6) motions to dismiss for lack of subject matter jurisdiction be GRANTED as to the *Bivens* claims asserted against them by Plaintiffs. *See* discussion at Part IV(B)(1)(a) (explaining why the motion is being granted under Rule 12(b)(6) rather than Rule 12(b)(1)).

### 2. Venue Is Not Appropriate In This District

The undersigned agrees with the individual defendants that venue in this district is not appropriate under 28 U.S.C. § 1391, the general venue statute, and Plaintiffs have identified no other venue statute applicable to the individual defendants.[8] Venue is not appropriate under § 1391(b), which provides venue rules for non-diversity actions like this, because not all of the defendants reside in Oklahoma, a

---

7. *See Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); and *United States v. Stanley*, 483 U.S. 669, 680–81, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987).

8. Section 1391 provides as follows:
 (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in:
 (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

 . . . .

 (e) A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.
 28 U.S.C. § 1391(a)(1) and (e).

substantial portion of the events giving rise to Plaintiffs' claims did not occur in Oklahoma, and Plaintiffs have not established that there is no other district in the Nation in which their claims against the individual defendants may be brought. The undersigned also finds that Plaintiffs' reliance on § 1391(e) is misplaced as to the individual defendants for the reasons set forth by the United States Supreme Court in *Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (i.e., the individual defendants were not officers or employees of the federal government, or acting under color of legal authority, at the time this suit was filed; and § 1391(e) only applies when the claim at issue is nominally against an individual government officer but is in reality against the United States and not the officer personally). Consequently, the undersigned also recommends that Rear Admiral Smith's and Captain Toennies' Rule 12(b)(3) motions to dismiss for improper venue be **GRANTED.**

### 3. Arguments Not Addressed

Because the undersigned has recommended dismissal of Plaintiffs' claims against the individual defendants for the reasons discussed above, the undersigned has not addressed the following arguments made by the individual defendants: (1) whether Plaintiffs' common law tort claims are barred by the doctrine of intra-military immunity recognized by the Tenth Circuit in *Durant v. Neneman*, 884 F.2d 1350 (10th Cir.1989) (see discussion in Part IV(B)(1)(b), *infra*); (2) whether Plaintiffs have adequately alleged a constitutional violation in connection with their *Bivens* claims, (3) whether the individual defendants are entitled to qualified immunity as to Plaintiffs' *Bivens* claims, or (4) whether Mrs. Daugherty's claims are barred by the statute of limitations given that she cannot

claim the benefit of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 App. U.S.C. § 525.

### III. PLAINTIFFS' CLAIMS AGAINST THE FEDERAL AGENCIES, DoD and DoN

Plaintiffs all but concede that their claims against the Department of Defense and the Department of the Navy are in fact claims against the United States. *See* Doc. No. 25, p. 16. Absent a waiver, sovereign immunity shields the United States and its agencies from suit. *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Other than through the FTCA, Plaintiffs have not demonstrated that the United States has waived its sovereign immunity with respect to any of the claims they have pled against DoD or DoN. The FTCA provides for relief against the United States only, and not directly against its departments, agencies or instrumentalities. *See* 28 U.S.C. §§ 2674 and 2679(a). *See also* 28 U.S.C. § 1346(b) (which provides subject matter jurisdiction over the United States for FTCA claims, but not its agencies). Plaintiffs cannot, therefore, assert any state law claims against DoD or DoN.

The United States Supreme Court has also held that constitutional tort claims under *Bivens* are not actionable directly against agencies of the United States. *Meyer*, 510 U.S. at 486, 114 S.Ct. 996. Plaintiffs cannot, therefore, assert their federal law claims against DoD or DoN. Consequently, the undersigned recommends, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), that DoD's and DoN's motions to dismiss be **GRANTED** and that Plaintiffs' claims against DoD and DoN be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[9]

**9.** Given that the undersigned recommends dismissal on subject matter jurisdiction

grounds, the undersigned will not discuss in detail the agencies' other grounds for dismiss-

## IV. PLAINTIFFS' CLAIMS AGAINST THE UNITED STATES

### A. PLAINTIFFS' CANNOT BRING *BIVENS* CLAIMS AGAINST THE UNITED STATES.

In *Bivens,* the United States Supreme Court held that under the Constitution there is an implied remedy for money damages against federal officials who violate the Constitution. The Court implied such a remedy in part because a direct action against the United States was not available due to sovereign immunity, and as a deterrent to lawless federal officials. In *FDIC v. Meyer,* the Supreme Court was asked to extend this implied remedy to claims directly against the United States and its agencies. The Court refused, holding that the logic behind *Bivens* did not support the extension of *Bivens* from federal agents to federal agencies. *Meyer,* 510 U.S. at 473, 114 S.Ct. 996. Thus, to the extent Plaintiffs' complaint can be read as attempting to state *Bivens* claims against the United States, the undersigned recommends that those claims be dismissed for failure to state a claim for which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6).

### B. PLAINTIFFS' FTCA CLAIMS

#### 1. Commander Daugherty's FTCA CLAIMS ARE BARRED BY THE *FERES* DOCTRINE.

 The FTCA operates as a waiver the United States' sovereign immunity with regard to certain common law tort claims. In *Feres,* however, the United States Supreme Court recognized an exception to this waiver of sovereign immunity for certain claims brought against the United States by military personnel.

*Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The United ed States argues, and the undersigned agrees, that Commander Daugherty's *FTCA* claims are barred by the Court's holding in *Feres.*

In 1950 in *Feres,* the Supreme Court held that when it enacted the FTCA Congress did not intend for the FTCA's remedies to apply to a person who sustained an injury incident to military service, even if that injury would otherwise be actionable under the FTCA. *Feres,* 340 U.S. at 138, 71 S.Ct. 153. Thirty-seven years later in *Johnson,* the Supreme Court resoundingly reaffirmed *Feres'* viability with the following language:

> In *Feres,* this Court held that service members cannot bring tort suits against the Government for injuries that "arise out of or are in the course of activity incident to service." This Court has never deviated from this characterization of the *Feres* bar. Nor has Congress changed this standard in the close to 40 years since it was articulated, even though, as the Court noted in *Feres,* Congress "possesses a ready remedy" to alter a misinterpretation of its intent.

*United States v. Johnson,* 481 U.S. 681, 686, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (internal citations omitted).

In *Feres,* the Court began by recognizing that the relationship between a sovereign and the members of its armed forced is unlike any relationship between private parties. The Court then offered the following rationales in support of its holding in *Feres:* (1) the United States' relationship with members of its armed forces is distinctively federal in character, making application of state law, *via* the FTCA,

---

al. For instance, the undersigned will not discuss whether Plaintiffs' claims against the agencies are barred by *Feres,* or whether Mrs. Daugherty's claims are barred by the statute

of limitations given that she cannot claim the benefit of the Soldiers' and Sailors' Civil Relief Act of 1940. *See* 50 App. U.S.C. § 525.

inappropriate; (2) Congress has established other compensation schemes for members of the armed forces (e.g., Veterans' Benefits Act, 38 U.S.C. §§ 101–5228); and (3) the likelihood that these types of claims would have an undesirable effect on military discipline, would require judicial second-guessing of military orders, and would require commanding officers to come forward and explain themselves with regard to a wide range of military decisions. *See Stencel Aero Engineering, Corp. v. United States,* 431 U.S. 666, 671–73, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); and *United States v. Shearer,* 473 U.S. 52, 58, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). The United States' military branches are not deliberative bodies; they are the coercive arm of the executive, and generally there is no room in the military for a debate about the right of an officer to command and the duty of a soldier to obey. *United States v. Grimley,* 137 U.S. 147, 153, 11 S.Ct. 54, 34 L.Ed. 636 (1890). It is, therefore, the soldier's filing of a lawsuit itself, as much as the possibility of recovery, which the Supreme Court feared would disrupt military discipline and the orderly conduct of military affairs. *Henninger v. United States,* 473 F.2d 814, 815–16 (9th Cir.1973).

The Supreme Court used the following phrases to delineate the scope of its holding in *Feres:* claims which are "incidental to service" in the military, injuries which are "service-connected," and injuries which "arise out of or are in the course of activity incident to service" are not compensable under the FTCA. *Feres,* 340 U.S. at 139 and 146, 71 S.Ct. 153. Thus, the Court in *Feres* established an incident-to-service test which focuses on the nature of the serviceman's injury and asks whether that injury was sustained incident to his service in the military. This reading of *Feres* was confirmed by the Supreme Court in *Johnson,* where the Court held that the focus is on the injury suffered and not on the "military status of the alleged tortfeasor ...." *Johnson,* 481 U.S. at 686–88, 107 S.Ct. 2063. The Court in *Johnson* also offered another definitional view of the phrase incident-to-service. The Court held that an injury is incident-to-service if it occurs "because of [the plaintiff's] military relationship with the Government ...." *Id.* at 689, 107 S.Ct. 2063.[10] This has led several courts, including the Tenth Circuit, to remark that the Supreme Court has extended the *Feres* doctrine so far that it bars recovery under the FTCA for all injuries suffered by military personnel that are even "remotely" related to the individual's status as a member of the military. *Pringle v. U.S.,* 208 F.3d 1220, 1223–24 (10th Cir.2000).[11]

The Supreme Court has made it clear that, although it was concerned about the second-guessing of command decisions and

---

**10.** The Tenth Circuit presaged the Supreme Court's holding in *Johnson* by holding in *Harten v. Coons,* 502 F.2d 1363 (10th Cir.1974) that it is the claimant's military status which is relevant, and that an injury is incident-to-service if it "stems from an official military relationship between the negligent person and the serviceman." *Id.* at 1365.

**11.** *See also Major v. United States,* 835 F.2d 641 (6th Cir.1987), where the Court summarized the Supreme Court's activity in this area as follows:

> Review of ... Supreme Court precedents makes it clear that in recent years the Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, all injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat purpose of the military activity from which it arose.

*Id.* at 644–45.

the effect the filing of a lawsuit challenging a superior officer's order would have on military discipline, an officer-subordinate relationship is not crucial to *Feres'* operation. *United States v. Stanley*, 483 U.S. 669, 680–81, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); *Shaw v. United States*, 854 F.2d 360, 364–65 (10th Cir.1988). In *Stanley*, the Court refused to adopt a test which would require courts to analyze the degree to which an officer-subordinate relationship existed, or the degree to which military discipline would actually be affected by a given FTCA claim. According to the Court, such inquiries would themselves require unwarranted and Congressionally-uninvited intrusion into military matters. The Court was reluctant to permit such inquiries in part because the Constitution specifically authorizes Congress, not the judiciary, to "make Rules for the Government and Regulation of the land and naval Forces ...." U.S. Const., Art. I, § 8, cl. 14. The Court opted, therefore, to continue its use of an incident-to-service test which focuses exclusively on the nature of the injury alleged. *Id.* at 682–84, 107 S.Ct. 3054.

### a. *Procedural Posture of the United States' Motion to Dismiss*

The United States moves to dismiss Plaintiff's FTCA claims, arguing that under *Feres* it has not waived its sovereign immunity for the types of claims brought by Commander Daugherty. The defense of sovereign immunity implicates the Court's subject matter jurisdiction. *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1302 (10th Cir. 2001). The United States' motion to dismiss is, therefore, a motion under Fed. R.Civ.P. 12(b)(1) to dismiss for lack of subject matter jurisdiction. As a general rule, a 12(b)(1) motion is not to be converted into a motion for summary judgment under Rule 56. *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir.1987). However, a well-recognized exception to this rule requires conversion of a Rule 12(b)(1) motion to a Rule 56 or a Rule 12(b)(6) motion "[i]f the jurisdictional question is intertwined with the merits of the [plaintiff's] case." *Id.*

A Rule 12(b)(1) motion is considered a "speaking motion" and it can include references to evidence extraneous to the complaint without having to be converted to a Rule 56 motion. A court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). Thus, converting a Rule 12(b)(1) motion to a Rule 56 or a Rule 12(b)(6) motion does not result in any significant difference in the way a court will consider the motion. The primary difference is not in the procedures used but in the effect the ruling will have upon the parties. A dismissal under Rule 12(b)(1) is not on the merits, whereas a dismissal under either Rule 56 or Rule 12(b)(6) is on the merits. *See* Fed.R.Civ.P. 41(b). Thus, when jurisdictional questions are intertwined with the merits, courts have held that the decision on the jurisdictional question ought to operate as a decision on the merits. That is why a Rule 12(b)(1) motion should be converted to a Rule 56 or a Rule 12(b)(6) motion when intertwining exists. *Wheeler*, 825 F.2d at 259, n. 5.

When subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional issue and the merits are considered to be intertwined. *Wheeler*, 825 F.2d at 259. Intertwining also exists when the jurisdictional question in fact requires resolution of an aspect of the substantive claim. *Pringle*, 208 F.3d at 1223. Congress has conferred exclusive subject matter jurisdiction on the district courts for claims brought under the FTCA. 28 U.S.C. § 1346(b)(1). Section 1346(b)(1) states that courts may exercise this jurisdiction

"[s]ubject to the provisions of [the FTCA] ...." Thus, the statute providing the substantive claim (i.e., the FTCA) is incorporated by reference into the jurisdictional statute (i.e., § 1346). Subject matter jurisdiction is, therefore, dependent on the same statute that provides the substantive claim in this case. Furthermore, determining whether the *Feres* doctrine applies in this case to divest the Court of subject matter jurisdiction will also require the Court to consider some aspects of the substantive claim under the FTCA. The subject matter jurisdictional question in this case is, therefore, intertwined with the merits as the Tenth Circuit recognized in *Pringle*, 208 F.3d at 1223.

Given that the jurisdictional question is intertwined with the merits, the undersigned finds that the Court is required to treat the United States' Rule 12(b)(1) motion as either a motion for summary judgment under Rule 56 or a motion to dismiss under Rule 12(b)(6). Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms: a facial attack which presumes the allegations in the complaint as true, or a factual attack which goes beyond the allegations contained in the complaint and challenges the facts upon which subject matter jurisdiction depends. *Holt v. U.S.*, 46 F.3d 1000, 1002–1003 (10th Cir.1995). In this case, the United States' *Feres* argument is a facial attack on the complaint. The United States has not submitted any extra-complaint evidentiary material in connection with the *Feres* issue.[12] Rather, the United States argues that, accepting Com-

mander Daugherty's allegations as true, his FTCA claims are barred by *Feres*. The undersigned will, therefore, consider the United States' motion to dismiss for lack of subject matter jurisdiction based on *Feres* as a motion to dismiss under Rule 12(b)(6). *See, e.g., Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir.1999) (where court converted Rule 12(b)(1) motion to a Rule 12(b)(6) motion).

### b. *Application of Feres*

At all relevant times Commander Daugherty was on active duty with the Navy, and he does not argue otherwise. All of the alleged wrongful acts were committed by Navy personnel. To the extent there is a situs for these alleged wrongful acts, they took place on Navy property and bases, and Commander Daugherty does not argue otherwise. Commander Daugherty's claims also themselves arise directly from the alleged denial of benefits to which he was only entitled because he was an active duty service member (e.g., the right to receive medical care in a military hospital, the right to travel expenses for himself and his dependents, the right to a fair and impartial Courts–Martial, the right to command NSWU10 unimpeded by the individual defendants, and the right to seek redress of his grievances from his superior officers under the Uniform Code of Military Justice). In short, all relevant activity in this case is military in nature; there is no relevant non-military activity at issue in this case.

The undersigned finds that Commander Daugherty was allegedly injured solely be-

12. The United States did attach a March 21, 1994 letter from F.J. Heron, Assistant Vice Chief of Naval Operations. Doc. No. 14, Exhibit 2. The United States argues in its brief that it attached this letter only to demonstrate that it had forwarded the letter to Plaintiffs' counsel and asked him to reconsider his legal position in light of the letter. The United States also states, however, that it in no way

intends to rely on the letter for purposes of its motion to dismiss. Doc. No. 15, p. 4, n. 3. While the better practice would have been not to attach the letter at all, the undersigned has taken the United States at its word and the undersigned has not considered the March 21st letter in reaching the conclusions expressed in this Report and Recommendation.

cause of his military relationship with the United States. *Johnson*, 481 U.S. at 689, 107 S.Ct. 2063. Had he not had this military relationship with the United States, Commander Daugherty would necessarily not have been injured by the actions of any of the defendants. Consequently, the undersigned finds that Commander Daugherty's alleged injuries were sustained incident to his service in the Navy. Commander Daugherty's FTCA claims are, therefore, barred by the *Feres* doctrine.

Commander Daugherty argues that his alleged injuries were not sustained incident to his service in the Navy because the actions taken against him were unauthorized and illegal. As discussed above, Commander Daugherty argues that pursuant to 10 U.S.C. §§ 162–165, which were amended by the Goldwater–Nichols Department of Defense Reorganization Act of 1986,[13] Captain Toennies had no legal authority to issue orders affecting him, even though Captain Toennies was a superior officer. As Commander Daugherty alleges, the Navy says he is wrong and that Captain Toennies was within his rights to issue orders affecting Commander Daugherty. Doc. No. 1, ¶ 77. Given this difference of opinion, Commander Daugherty states in his brief that he has invoked the Court's jurisdiction specifically to "examine the statutes and determine whether command authority over [him] was unlawfully usurped by particular Defendants." Doc. No. 41, p. 6. This is precisely the type of inquiry the Supreme Court sought to foreclose with its holdings in *Feres* and progeny. The Supreme Court has been absolutely clear that it believes that the federal judiciary has no business entertaining suits which would require it to second-guess the validity of military orders.

Commander Daugherty's argument is essentially this: his injuries were not sus-

tained incident to his service in the Navy because the person or persons who allegedly inflicted those injuries had no command authority over him (i.e., had no authority to issue the orders which caused the injuries alleged). This argument stands *Feres* on its head. The focus under *Feres* has always been on the nature of the plaintiff's relationship with the military at the time of the alleged injury, and there has never been a focus on the status or authority of the alleged tortfeasor. This distinction is clearly established by the Supreme Court in *Stanley*.

In *Stanley*, the plaintiff, a master sergeant in the Army, volunteered to participate in a program ostensibly designed to test the effectiveness of protective clothing and equipment against chemical warfare. The plaintiff alleged, however, that while participating in the program he was secretly administered doses of LSD. Apparently, the real objective of the program was to study the effect of LSD exposure on human beings. Upon learning that he had been secretly administered doses of LSD, the plaintiff filed a *Bivens* action against various known and unknown federal officials. The question presented to the Supreme Court was whether plaintiff's claim was barred by the Court's earlier decision in *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

*Chappell* involved a race discrimination claim brought by a Navy enlisted man against his superior officers under *Bivens*. In *Chappell*, the Court held that for reasons similar to those articulated in *Feres* and its progeny, with regard to FTCA claims, *Bivens* claims also could not be brought by military personnel. In *Stanley*, the Court began by holding that the immunity from suit granted to the United States in *Feres* and the immunity from suit granted to federal officials in *Chappell*

---

**13.** P.L. No. 99–433, 100 Stat. 992 (codified at various sections of Titles 10 and 50).

should be coextensive, and should be informed by the concerns underpinning *Feres*. *Stanley*, 483 U.S. at 680–83, 107 S.Ct. 3054. Thus, even though *Stanley* was a *Bivens* case against federal officials, its holding applies with equal force to an FTCA claim against the United States.

For purposes of its decision in *Stanley*, the Court assumed that some of the defendants had no command authority over the plaintiff; that some of the defendants were not the plaintiff's superior officers; and that some were probably civilians. The Court found none of these assumed facts to be relevant to the *Feres* inquiry. The Court held that the officer-subordinate relationship between the plaintiff and the alleged tortfeasor is irrelevant for purposes of the *Feres* inquiry. *Stanley*, 483 U.S. at 680–84, 107 S.Ct. 3054. The only relevant inquiry under *Feres* is whether the plaintiff was engaging in activity incident to his service in the armed forces when he was injured. If he was, he cannot sue under the FTCA or *Bivens* regardless of the tortfeasor's status or the nature of his conduct. *Id.* Thus, whether Captain Toennies did or did not have command authority over Commander Daugherty is irrelevant to the *Feres* inquiry. The only issue is whether Commander Daugherty was engaging in activity incident to his service in the Navy at the time Captain Toennies, and the other defendants, allegedly injured him. The answer to that question, based on the allegations in Plaintiffs' complaint, is a resounding "Yes."

Commander Daugherty also argues that the *Feres* doctrine was adopted by the Supreme Court before the Court had a chance to review the sweeping changes to the military command structure brought about by the Goldwater–Nichols Act. Goldwater–Nichols was passed on October 1, 1986. The Supreme Court decided *Johnson* and *Stanley*, both of which reaffirmed the continued validity of *Feres*, in 1987. There is nothing in *Johnson* or *Stanley* which suggests that the Goldwater–Nichols amendments, which were heralded as the most comprehensive reorganization of the military since 1947 and the close of WWII,[14] had any impact on the Court's analysis. Again, however, the only potential impact Goldwater–Nichols could have had was to change the nature of the relationship between an alleged tortfeasor and the serviceman filing a claim. As discussed, the nature of that relationship is irrelevant to the *Feres* analysis.

Commander Daugherty relies principally on the Ninth Circuit's decision in *Lutz v. Secretary of the Air Force*, 944 F.2d 1477 (9th Cir.1991) for his argument that his FTCA claims against the United States should not be barred by *Feres*. For several reasons, however, the undersigned finds no support for Commander Daugherty's argument in *Lutz*.

In *Lutz*, a female major in the Air Force sued the United States under the FTCA and two of her subordinates under *Bivens* and California tort law. Major Lutz filed suit after her two subordinates broke into her office, took personal papers from her desk which indicated she was having a lesbian affair with her civilian secretary, and disseminated those papers to her superiors in an attempt to injure her reputation and military career. Major Lutz also alleged that after her personal papers were disclosed, she was disciplined and forced to resign from the Air Force, and that her subordinates were not disciplined at all. *Lutz*, 944 F.2d at 1479–80.

The trial court dismissed all of Major Lutz' FTCA claims against the United

---

14. Peter Murphy and William Koenig, *Whither Goldwater–Nichols?*, 43 Naval L.Rev. 183, 188 (1996).

States, finding that they were barred by *Feres*. The Ninth Circuit agreed that dismissal of Major Lutz' claims against the United States was proper. *Lutz*, 944 F.2d at 1485, n. 8. Thus, *Lutz* provides no support for Commander Daugherty's argument that his FTCA claims against the United States should not be dismissed. The Ninth Circuit held, however, that Major Lutz' *Bivens* and her common law tort claims against her subordinates were not barred by *Feres*. Initially, the undersigned is at a loss from a review of the Ninth Circuit's opinion to determine how it is that Major Lutz' injuries could be incident to her service in the Air Force for purposes of her FTCA claims against the United States, but not for her *Bivens* claims against her subordinates; especially considering that in *Stanley* the Supreme Court made it clear that *Feres* applies equally to FTCA claims and *Bivens* claims. The Ninth Circuit's opinion in *Lutz* does not discuss Major Lutz' *Bivens* claims directly, and the opinion seems focused more on whether Major Lutz' common law tort claims against her subordinates were barred by *Feres*. Understood in this light, the court's opinion in *Lutz*, while analytically ambiguous, comes into focus.

The Supreme Court has never considered whether its holding in *Feres* should be extended to common law tort claims brought by one service member against another. *Feres* has only been applied by the Supreme Court to FTCA claims against the United States and *Bivens* claims against federal officials. The Ninth Circuit has, however, extended *Feres* to cover common law tort claims. There are several analytical problems with this approach, and this approach was specifically rejected by the Tenth Circuit in *Durant v. Neneman*, 884 F.2d 1350 (10th Cir.1989). As discussed above, *Feres* mandates an inquiry into the *plaintiff's* status at the time of the alleged injury and whether the alleged injury was sustained while the

*plaintiff* was engaged in activity incident to service. In *Lutz*, however, the Ninth Circuit turns *Feres* on its head and focuses on the **defendants'** status, and on whether the **defendants'** conduct was incident to their service. *Lutz*, 944 F.2d at 1487. The Ninth Circuit was forced to distort *Feres* in this manner because it fails to distinguish between true *Feres* cases and intra-military immunity cases as does the Tenth Circuit.

In *Durant*, the Tenth Circuit addressed whether *Feres* applied to bar a negligence claim brought by one serviceman against another. In *Durant*, the serviceman/plaintiff was running in formation on an Army base when he was hit and injured by another serviceman driving his private vehicle on the way to his duty station. *Durant*, 884 F.2d at 1351, n. 2. The district court applied *Feres* and dismissed the plaintiff's negligence claim. The Tenth Circuit reversed, holding that the "the doctrine of intra-military immunity," and not the *Feres* doctrine controlled.

> While courts employ *Feres* rationales in applying intra-military immunity, it cannot be said accurately these are true *Feres* cases because the claims asserted are not founded upon the FTCA and the liability of the United States is not implicated.... [T]his is an important distinction too often blurred, yet necessary to a reasoned analysis of the doctrines of immunity which flow from *Feres*.

*Durant*, 884 F.2d at 1352.

In *Feres*, the Supreme Court refused to allow claims under the FTCA against the United States by servicemen who are injured incident to their service because the Court found that Congress did not intend to waive the United States' sovereign immunity as to such claims when it passed the FTCA. When the Supreme Court implied a cause of action under the Constitution in *Bivens*, the Court held that the

cause of action it was recognizing should only be implied on a case-by-case basis and not at all when "special factors counseling hesitation" are present. *Bivens,* 403 U.S. at 396, 91 S.Ct. 1999. In *Chappell* and *Stanley,* the Supreme Court found that in the context of a constitutional claim by one serviceman against another, there were "special factors" which counseled against the implication of a cause of action in that instance. In particular, the Court was concerned about creating a species of action that did not exist at common law, especially given the fact that the Constitution vests plenary authority over the military in Congress and Congress had not seen fit to provide a damage remedy to military personnel whose constitutional rights were violated by their superior officers. *Chappell,* 462 U.S. at 303–304, 103 S.Ct. 2362.

None of the concerns in *Feres* or *Chappell* are directly relevant to common law tort claims brought by one serviceman against another. When one serviceman sues another in tort, there are no sovereign immunity concerns and, necessarily, there are no concerns about creating liability that did not exist at common law. It is this fact which led the Tenth Circuit in *Durant* to recognize that a serviceman's immunity for tort liability is distinct from whether the United States is liable under the FTCA or whether a constitutional claim should be implied under *Bivens.* The only reason to immunize a serviceman from tort liability is to prevent the undue interference with military discipline which would result once civilian courts start "delving into military matters and calling to bar military decisions and institutions." *Durant,* 884 F.2d at. 1352. Thus, intramilitary immunity has been extended only when the serviceman/defendant was engaged in a "military act" at the time he allegedly injured the plaintiff. When, however, "military personnel are engaged in distinctly nonmilitary acts, they are act-

ing, in effect, as civilians and should be subject to civil authority;" and recovery in tort ought not be denied just because the defendant was wearing a military uniform at the time of his tortious act. *Id.* at 1354.

In intra-military immunity cases, the focus is entirely on the nature of the defendant's conduct: was the defendant's tortious act a "military act." *Durant,* 884 F.2d at 1353. In *Durant,* the Tenth Circuit held that the defendant/serviceman's act of driving his private vehicle to his duty station was not a military act, and he was not entitled to immunity from tort liability. The Tenth Circuit specifically noted, however, that had it conducted the "incident to service" analysis required by *Feres,* the result would have been completely different because there was no question that the plaintiff was injured while engaging in activity incident to his service (i.e., running in formation on an Army base). *Durant,* 884 F.2d at 1354. The same result would occur on the facts in *Lutz* were the Ninth Circuit to use the same analysis the Tenth Circuit used in *Durant.* Breaking into Major Lutz' office after hours and stealing her personal papers were not "military acts." Major Lutz' subordinates should not, therefore, have been immune from tort liability to Major Lutz, as the Ninth Circuit correctly held. However, if a true *Feres* analysis were applied in *Lutz* a different result would obtain, just as in *Durant,* because Major Lutz was injured incident to her service in the Air Force. Thus, while *Lutz* might lend support to Plaintiffs' common law tort claims against the individual defendants in this case, should Plaintiffs ultimately sue them in a court which has personal jurisdiction over them, the undersigned finds no support in *Lutz* for Commander Daugherty's FTCA claims against the United States. Those claims are barred by *Feres,* and the undersigned recommends that the United States' motion to dismiss Commander Daugherty's FTCA

claims be GRANTED pursuant to Fed. R.Civ.P. 12(b)(6).

### c. *Commander Daugherty's Request that Feres be Overruled*

■ Commander Daugherty asks the Court to overrule *Feres* to the extent its holding would be applicable to this case. Doc. No. 41, p. 5–6. The undersigned recognizes that the *Feres* doctrine has been criticized by many courts and commentators, and that its validity was confirmed in *Johnson* by only a 5 to 4 vote. *See Johnson,* 481 U.S. at 692, 107 S.Ct. 2063 (Scalia, J., dissenting) (Justice Scalia roundly criticized the *Feres* doctrine and suggested that it should be overruled, but noted that none of the parties in that case had asked the Court to overrule *Feres* ). Despite this criticism, the undersigned finds that the Court is bound by *stare decisis* to apply the *Feres* doctrine, as affirmed by the Supreme Court in *Johnson* and *Stanley*, to this case. *Pringle,* 208 F.3d at 1227, n. 4. Only the Supreme Court can overrule or modify *Feres. Labash v. United States,* 668 F.2d 1153, 1156 (10th Cir.1982). The undersigned assumes, therefore, that Commander Daugherty makes this argument only to preserve the issue for appeal and to perhaps give Justice Scalia the opportunity he was looking for in *Johnson.*

### d. *Mrs. Daugherty's FTCA Claims are Also Barred by Feres Because They Have Their Genesis In Commander Daugherty's Claims.*

Mrs. Daugherty is a civilian and not a member of the Nation's armed forces. Her injuries could not, therefore, have been received in the course of activity incident to her service in the military. Nevertheless, *Feres* bars suits by a serviceman's family when the family member seeks damages which themselves flow from injuries the serviceman suffered incident to service. This is true even when the family member's claim is technically personal in character (e.g., wrongful death, loss of consortium). This principle is demonstrated by the *Feres* decision itself. In *Feres,* the Supreme Court consolidated three cases, two of which were wrongful death actions by widows of servicemen who died from injuries suffered incident to their service (i.e., one died in a barracks fire and one died as the result of medical malpractice at a military hospital). *Feres,* 340 U.S. at 136–38, 71 S.Ct. 153. Subsequent courts have also held that *Feres* bars claims of mental anguish suffered by family members, which is clearly a claim personal to the family member. *DeFont v. United States,* 453 F.2d 1239, 1240 (1st Cir.1972).

■ The Tenth Circuit has also held that *Feres* bars claims by family members when the claim has its genesis in a nonactionable injury to a serviceman. In *Harten,* a serviceman, while on active duty, underwent an elective vasectomy at a military hospital. After the surgery, the serviceman was provided with a report indicating he was sterile. Subsequently, however, his wife became pregnant. The serviceman and his wife then sued the United States for negligence in performing the vasectomy and in preparing the sterility report. The Tenth Circuit held that both the serviceman's and his wife's claims were barred by *Feres. Harten v. Coons,* 502 F.2d 1363, 1365 (10th Cir.1974).[15] The

---

15. *See also Laswell v. Brown,* 683 F.2d 261, 269 (8th Cir.1982) (claim by child of WWII veteran that he suffered genetic deformities due to his serviceman/father's exposure to nuclear bomb tests is barred by *Feres* ); *Monaco v. United States,* 661 F.2d 129, 133 (9th Cir.1981) (same); *Lombard v. United States,* 690 F.2d 215, 226 (D.C.Cir.1982) (same); *Hinkie v. United States,* 715 F.2d 96, 98 (3rd Cir.1983) (same); *Gaspard v. United States,* 713 F.2d 1097, 1101–1102 (5th Cir.1983) (claim by wives of servicemen subjected to nuclear testing that they miscarried and had

undersigned can think of no injury more "personal" than the injury suffered by the serviceman's wife in *Harten,* or the injuries by those children who suffered genetic deformities as a result of their serviceman/father's exposure to atomic radiation. Nevertheless, despite the personal character of these alleged injuries, the Tenth Circuit and other courts have found these claims to be barred by *Feres* because the claims had their genesis in the non-actionable injury of their serviceman relative. Thus, FTCA claims by family members which stem from or have their genesis in injuries that were incident to the military service of their serviceman/relative are barred by *Feres.* If the injury to the family member would not have arisen but for the injury to the serviceman, the family member's claim is barred by *Feres.*[16]

Plaintiffs' complaint makes very few references to Mrs. Daugherty. The most specific allegations regarding Mrs. Daugherty's alleged injuries can be found in ¶¶ 113, 116 and 131–34. There, Mrs. Daugherty alleges that she has suffered emotional damages, defamation of her character, loss of liberty, and the loss of benefits which she enjoyed as the wife of an active duty serviceman, including the right to accompany her husband when he traveled for medical care. A review of the complaint demonstrates, however, that all of Mrs. Daugherty's claims are all based on the same facts as her husband's claims, and she relies on the same allegedly illegal acts taken by defendants as does her serviceman/husband. All of Mrs. Daugherty's

claims have as their genesis the alleged injuries suffered by her husband at the hands of Captain Toennies. The undersigned finds, therefore, that Mrs. Daugherty's claims are barred by *Feres* to the same extent her husband's claims are barred by *Feres. See, e.g., Lombard,* 690 F.2d at 223–26; *Hinkie,* 715 F.2d at 98; *Minns,* 155 F.3d at 449–50. The undersigned recommends that the United States' motion to dismiss Mrs. Daugherty's FTCA claims be **GRANTED** pursuant to Fed.R.Civ.P. 12(b)(6).

**2. Plaintiffs' Complaint Fails to State a Claim for Relief Under the FTCA.**

▮ The jurisdictional statute applicable to Plaintiffs' FTCA claims provides as follows:

> Subject to the provisions of [the FTCA], the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ..., for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, **under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.**

28 U.S.C. § 1346(b) (emphasis added). The FTCA itself provides as follows:

---

emotional distress are barred by *Feres* ); and *Minns v. United States,* 155 F.3d 445, 449–50 (4th Cir.1998) (claims by wives and severely deformed children of Gulf War veteran exposed to toxins during the war are barred by *Feres* ).

**16.** *Feres* does not bar a family member's claim when their injury has nothing to do with an injury to their serviceman/relative. This situation has often arisen where military

medical personnel negligently treat a spouse or child of a serviceman. *See, e.g., Portis v. United States,* 483 F.2d 670 (4th Cir.1973) (serviceman's child treated negligently in military hospital); *Williams v. United States,* 435 F.2d 804 (1st Cir.1970) (negligent refusal to admit serviceman's child to military hospital); and *Costley v. United States,* 181 F.2d 723 (5th Cir.1950) (negligent treatment of sergeant's wife in delivery of child in military hospital).

The United States shall be liable, respecting the provisions of this title relating to tort claims, **in the same manner and to the same extent as a private individual under like circumstances** . . . .

28 U.S.C. § 2674 (emphasis added). The test established by these sections for determining the United States' liability under the FTCA is "whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Rayonier Inc. v. United States*, 352 U.S. 315, 319, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). Thus, as to certain governmental functions the United States cannot be held liable, for no private analog exists. *See generally* discussion in Daniel A. Morris, *Federal Tort Claims* § 1:6 (2001) from which the undersigned quotes liberally below.

The FTCA imposes liability on the United States to the same extent as a private person under "like," not identical circumstances. There must, therefore, be some analogy that can be made to private person liability under the circumstances. A few examples suffice to illustrate the point. The United States cannot be held liable under the FTCA for wrongful deprivation of citizenship because there is no private analog to the conferring of citizenship. *Akutowicz v. United States*, 859 F.2d 1122 (2nd Cir.1988). The United States is not liable under the FTCA to manufacturers whose products are banned by illegally promulgated regulations of the Consumer Product Safety Commission because the quasi-legislative function performed by the Commission has no private person analog. *C.P. Chemical Co., Inc. v. United States*, 810 F.2d 34, 37–38 (2nd Cir.1987); *Jayvee Brand, Inc. v. United States*, 721 F.2d 385 (D.C.Cir.1983); *Sky Ad, Inc, v. McClure*, 951 F.2d 1146 (9th Cir.1991) (business affected by invalid FAA regulations cannot state a claim under FTCA).

In *Agronics*, the Tenth Circuit held that it is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States, or its agents, to carry out a federal statutory duty. *United States v. Agronics, Inc.*, 164 F.3d 1343, 1345 (10th Cir.1999) (quoting *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997)). *See also Williams v. United States*, 242 F.3d 169, 173–74 (4th Cir.2001) (United States not liable under FTCA for a government hospital's alleged violation of the federal Emergency Medical Treatment and Active Labor Act). Because state law provides the rule of decision for claims brought under the FTCA, the violation of a duty imposed only by a federal statute or regulation is not sufficient to create FTCA liability. *Id.* The FTCA does not cover conduct which is governed exclusively by federal law. Conduct which violates federal law will support liability under the FTCA only when the conduct also violates a duty imposed by applicable state law on private actors. *See* Daniel A. Morris, *Federal Tort Claims* § 1:6 (2001) (citing several cases). *See also Chen v. United States*, 854 F.2d 622, 626 (2nd Cir.1988) (United States not liable under FTCA for GSA's alleged violations of federal procurement statutes and regulations). "What is necessary is some relationship between the governmental employee and the plaintiff to which state law would attach a duty of care in purely private circumstances." *Myers v. United States*, 17 F.3d 890, 899 (6th Cir.1994).

All of Plaintiffs' claims in this case are premised on their bedrock argument that Captain Toennies violated provisions of Title 10 of the United States Code when he took various actions affecting Commander Daugherty and his wife. That is, all of Plaintiffs' claims are bottomed on an alleged violation of federal law. The Tenth Circuit held in *Agronics* that a violation of

federal law is not actionable under the FTCA. Furthermore, in their complaint, Plaintiffs do not identify any tort from any particular state which would serve as a private analog for Captain Toennies' alleged improper exercise of command authority over Commander Daugherty in violation of Title 10.

There is no private analog to the alleged improper exercise of military authority in this case. This fact was expressly recognized by the Supreme Court in *Feres* with the following language:

> [P]laintiffs can point to no liability of a "private individual" even remotely analogous to that which they are asserting against the United States. We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving. Nor is there any liability "under like circumstances," for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command.

*Feres*, 340 U.S. at 141–42, 71 S.Ct. 153. The undersigned finds, therefore, that Plaintiffs have failed to state a claim for relief under the FTCA. Consequently, the undersigned recommends that the United States' motion to dismiss be **GRANTED** and that Plaintiffs' FTCA claims be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### 3. Other Basis for Dismissal of Plaintiffs' FTCA Claims

Because the FTCA constitutes a waiver of the government's sovereign immunity, the FTCA's prerequisites to suit are considered jurisdictional requirements. Consequently, the FTCA's notice provisions are strictly construed and cannot be waived. Section 2675(a) of the FTCA requires a plaintiff, prior to filing suit in the

district court, to present a claim to the "appropriate federal agency." This claim must be a writing which describes the alleged injury in sufficient detail to enable the agency to begin its own investigation, and which requests a sum certain in damages. Failure to comply with the sum certain requirement results in the case being treated as if no administrative claim had ever been filed. *Bradley v. United States*, 951 F.2d 268, 271 (10th Cir.1991); *Cizek v. U.S.*, 953 F.2d 1232, 1233 (10th Cir.1992).

The United States argues that Plaintiffs' FTCA claims must be dismissed for failure to present a claim in an amount certain as required by 28 U.S.C. § 2675(a). While there appears to be some merit to the United States' argument,[17] the undersigned will make no findings in connection with this argument because it has already been recommended that Plaintiffs' FTCA claims be dismissed for lack of subject matter jurisdiction under *Feres* and for failure to state a claim under *Agronics*.

### C. PLAINTIFFS' CLAIMS UNDER THE ADMINISTRATIVE PROCEDURES ACT

In Count I of their complaint, Plaintiffs request, pursuant to 5 U.S.C. § 702, that the Court determine that the defendants violated their First, Fifth and Eighth Amendment rights. As a remedy, Plaintiffs ask that the Court order the setting aside and expungement from Commander Daugherty's personnel record all actions, findings and conclusions resulting from Captain Toennies' unlawful exercise of command authority over him. Doc. No. 1, ¶ 93 and Wherefore Clause to Count I on p. 27.

Section 702 is part of the Administrative Procedures Act, and it provides as follows:

---

**17.** *See Kendall v. Watkins,* 998 F.2d 848, 852– 53 (10th Cir.1993).

A person suffering legal wrong because of agency action ... is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702. With § 702, Congress waived the United States' sovereign immunity with regard to claims other than for money damages when those claims are based on injurious agency action. Plaintiffs may not, therefore, obtain money damages with their APA claim, and they are limited to injunctive or other equitable relief. *Department of Army v. Blue Fox, Inc.,* 525 U.S. 255, 262–63, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999).

Before addressing the merits of a plaintiffs' arguments under § 702, the Tenth Circuit has held that when a court is asked to review internal military affairs, as in this case, the court must first determine whether the dispute is justiciable. Prior to the Supreme Court's decision in *Darby v. Cisneros,* the Tenth Circuit adopted the following two-step justiciability test articulated by the Fifth Circuit in *Mindes v. Seaman,* 453 F.2d 197, 201–202 (5th Cir. 1971):

> [A] court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures. [However,] not all such allegations are reviewable.

A district court faced with a sufficient allegation must examine the substance of that allegation in light of the policy reasons behind nonreview of military matters. In making that examination, such of the following factors as are present must be weighed (although not necessarily in the order listed).

1. The nature and strength of the plaintiff's challenge to the military determination. Constitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal in the whole scale of values-compare haircut regulation questions to those arising in court martial situations which raise issues of personal liberty. An obviously tenuous claim of any sort must be weighted in favor of declining review ....

2. The potential injury to the plaintiff if review is refused.

3. The type and degree of anticipated interference with the military func-

tion. Interference *per se* is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief.

4. The extent to which the exercise of military expertise or discretion is involved. Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions.

*Id.* at 201–202. *See Lindenau v. Alexander,* 663 F.2d 68 (10th Cir.1981) (adopting the *Mindes* test).

In 1993, the Supreme Court decided *Darby v. Cisneros,* 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). In that case, the United States Supreme Court held that exhaustion of administrative remedies is not required prior to seeking judicial review under the APA when neither the relevant statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review. *Id.* at 138, 113 S.Ct. 2539. After the Supreme Court decided *Darby,* there was some debate whether the *Mindes* test, which had been adopted by the Tenth Circuit in *Lindenau,* was still viable, given that it contains an exhaustion requirement. The Tenth Circuit answered this question directly in 1998 in an unpublished opinion, when it held that:

At no time has this court overruled *Lindenau* or rejected application of the *Mindes* test. Accordingly, the *Mindes* test still applies to "insure[ ] that judicial intrusions into military matters are limited to the vindication of federal interests."

*Robertson v. United States,* No. 97–5183, 1998 WL 223159, at *3 (10th Cir. May 01, 1998) (internal citations omitted) (quoting *Watkins v. United States Army,* 875 F.2d 699, 736 (9th Cir.1989) (Hall, J., dissenting)). While reaffirming *Mindes* in *Robertson,* the Tenth Circuit reserved ruling on whether *Mindes'* exhaustion requirement survived *Darby* because in *Robertson* the plaintiff had exhausted all possible administrative remedies.

In this case, the United States points out that Commander Daugherty has not presented a claim to the Board for Correction of Navy Records which was established to determine "the existence of error or injustice in the naval records of current and former members of the Navy." 32 C.F.R. § 723.2(b).[18] Presumably, the United States points this out to demonstrate that Commander Daugherty has another administrative avenue which he can follow. However, the United States points to nothing in the statutes or regulations establishing the Board which expressly requires administrative exhaustion prior to seeking judicial review. The undersigned finds, therefore, that under *Darby* Plaintiffs' APA claims cannot be dismissed for failure to exhaust administrative remedies as suggested by the government's briefing.

While the undersigned finds that *Mindes'* exhaustion requirement is no longer applicable after *Darby,* the undersigned finds that, as the Tenth Circuit held in *Robertson,* the Court must apply the rest of the *Mindes* test to determine whether Plaintiffs' APA claims are justiciable given the military context in which they are presented. However, in their briefs neither party addresses the *Mindes* factors. The parties are, therefore, directed to address the *Mindes* factors and the

---

**18.** *See* 10 U.S.C. §§ 1551 to 1554; and 32 C.F.R. §§ 723.1 to 723.11.

justiciability of Plaintiffs' APA claims in their objections to this Report and Recommendation. The District Judge can then consider those arguments herself or re-commit the matter to the undersigned for additional findings and recommendations in light of the new briefing. *See* 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b). The undersigned cannot, therefore, at this point recommend dismissal of Plaintiffs' APA claims as non-justiciable under *Mindes, Lindenau* and *Robertson.*

Section 702 of the APA contains two separate conditions on the right to judicial review.

First, the person claiming a right to sue must identify some "agency action" that affects him in the specified fashion; it is judicial review "thereof" to which he is entitled. The meaning of "agency action" for purposes of § 702 is set forth in 5 U.S.C. § 551(13) ... which defines the term as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. § 551(13). When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the "agency action" in question must be "final agency action." *See* 5 U.S.C. § 704.

*Lujan v. National Wildlife Federation,* 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The United States moves to dismiss Plaintiffs' APA claim, arguing that Plaintiffs have failed to show either "agency action" or that the agency action in question is "final."

In this case, Commander Daugherty alleges that he filed several complaints, all against Captain Toennies, with the Chief of Naval Personnel, the Navy Inspector General, the Department of Defense Inspector General, the Secretary of Defense, and with his own Congressman. Commander Daugherty also filed formal "Complaints of Wrong" under Article 138 of the Uniform Code of Military Justice charging Captain Toennies with wrongful conduct. *See* 10 U.S.C. § 938. Commander Daugherty alleges that certain of these complaints were acted upon and others were not, or Commander Daugherty is not aware that they have been acted upon. *See* Doc. No. 1, ¶¶ 64–92.

From the allegations in the complaint, it appears that all of Commander Daugherty's complaints listed Captain Toennies' alleged indiscretions and asked that action be taken against Captain Toennies. It is unclear, therefore, what action Plaintiffs wish the Court to take with respect to these complaints in this case. Courts are not required to determine questions which have become purely academic. *Ford Motor Co. v. NLRB,* 305 U.S. 364, 375, 59 S.Ct. 301, 83 L.Ed. 221 (1939). Plaintiffs must demonstrate how judicial review of the actions taken, or not taken, with respect to the complaints Commander Daugherty filed against Captain Toennies would at this juncture benefit them. Plaintiffs do not allege any such benefit, and they do not identify any such benefit in their briefing. Review of the complaints against Captain Toennies might be necessary if Captain Toennies and Commander Daugherty were still in the Navy and the conduct alleged by Commander Daugherty could still occur and have an effect on Commander Daugherty, but neither of them is in the Navy any longer. The undersigned finds, therefore, that the need for review of the complaints against Captain Toennies is moot.

Much of the United States' no-final-agency-action argument is fueled by the

fact that Plaintiffs' complaint does not clearly identify the precise action they want reviewed. In typical APA cases against a military department, the plaintiff/serviceman challenges the fact or nature of his discharge, the denial of a promotion or his forced retirement.[19] In these cases, there is a clear and discrete decision which the plaintiff is challenging. Plaintiff has not identified such a clearly articulated decision as a discharge or the denial of promotion. What Plaintiffs do allege in their complaint is that there are derogatory comments or records in Commander Daugherty's file which damage his reputation and may impact his future ability to obtain desired employment. It is the placing of these records and comments in Commander Daugherty's personnel file which Plaintiffs argue is the final agency action in this case. While there is a legitimate dispute as to whether these records qualify as final agency action, the undersigned finds that the United States' motion to dismiss Plaintiffs' request for judicial review of the placement of these records in his file be denied at this stage of the litigation. Plaintiffs might be able to establish a set of facts establishing a right to judicial review of these records.

The undersigned is not persuaded that Plaintiffs will be unable to establish finality in this case. In order to determine if an agency action is final, courts look to whether its impact on the plaintiff is "direct and immediate," *Franklin v. Massachusetts,* 505 U.S. 788, 796–97, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); whether the action

"mark[s] the consummation of the agency's decisionmaking process," *Bennett v. Spear,* 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); and whether the action is one by which "rights or obligations have been determined, or from which legal consequences will flow . . . ." *Id.* The effects of bad reports in his personnel file could have a direct and immediate impact on Commander Daugherty's ability to obtain desired employment. There is also no reason to believe that the Navy is contemplating any further action in connection with the records in Commander Daugherty's personnel file. Plaintiffs might, therefore, be able to establish a set of facts which demonstrates that the placement of reports in Commander Daugherty's personnel file constitutes final action for purposes of the APA. Furthermore, given evidence regarding the type of documents at issue, Plaintiff might also be able to establish a set of facts demonstrating that the records at issue are orders, sanctions or relief (or their equivalents) for purposes of § 551(13)'s definition of agency action. Granting a motion to dismiss on these issues is, therefore, not appropriate. The United States' arguments are more appropriately resolved on a motion for summary judgment where the Court will have the benefit of an evidentiary record to consider in making a determination about the placement of these, as yet, unidentified records in Commander Daugherty's file (assuming, of course, Commander Daugherty can establish these types of military personnel decisions are even justiciable under *Mindes* ). Consequently, the undersigned

---

**19.** *See, e.g., St. Clair v. Secretary of the Navy,* 970 F.Supp. 645 (C.D.Ill.1997) (challenging characterization of discharge as less than honorable); *Crane v. Secretary of the Army,* 92 F.Supp.2d 155 (W.D.N.Y.2000) (challenging an involuntary discharge); *Wilhelm v. Secretary of the Army,* 90 F.Supp.2d 3 (D.D.C.2000) (challenging decision to remove his as orthopedic surgery resident in Army hospital); *Kosnik v. Secretary of the Air Force,* 31 F.Supp.2d 151 (D.D.C.1998) (challenging forced retirement); and *Nation v. Secretary of the Navy,* 107 F.Supp.2d 37 (D.D.C.2000) (challenging denial of a promotion).

recommends that the United States' motion to dismiss Plaintiffs' APA claim be **DENIED**.

## V. PLAINTIFFS' CLAIM UNDER THE VICTIMS OF CRIME ACT

In Count IV of their complaint, Plaintiffs allege a violation of their rights as victims of a crime and demand restitution under 42 U.S.C. § 10606. Plaintiffs demand this restitution from all defendants. The undersigned finds that Plaintiffs' claim for restitution under § 10606 is frivolous.

Congress passed the Victims of Crime Act and established a fund from the proceeds of fines and special monetary assessments collected from criminal defendants, bail forfeitures and other penalties for failures to appear, and private donations, 42 U.S.C. §§ 10601 and 10604–10605. Congress then gave the Department of Justice the authority to make grants to certain eligible public and nonprofit organizations at the state level which provide assistance and compensation to crime victims. *Id.* at §§ 10602–10603. The undersigned finds no basis in any of these provisions for a claim against any of the defendants.

As part of the Victims of Crime Act, Congress also enacted § 10606, which requires agencies of the United States to use their "best efforts to see that victims of crime are accorded the rights described in [§ 10606(b)]." 42 U.S.C. § 10606(a). Section 10606(b) provides as follows:

A crime victim has the following rights:

(1) The right to be treated with fairness and with respect for the victim's dignity and privacy.

(2) The right to be reasonably protected from the accused offender.

(3) The right to be notified of court proceedings.

(4) The right to be present at all public court proceedings related to the offense, unless the court determines that testimony by the victim would be materially affected if the victim heard other testimony at trial.

(5) The right to confer with [the] attorney for the Government in the case.

(6) The right to restitution.

(7) The right to information about the conviction, sentencing, imprisonment, and release of the offender.

42 U.S.C. § 10606(b). Presumably, it is the right to restitution in § 10606(b)(6) upon which Plaintiffs are relying in Count IV of their complaint.

There is nothing in the Victims of Crime Act which would indicate that the right to restitution mentioned in § 10606 refers to anything other than the right to a restitution order in the context of sentencing a convicted criminal under 18 U.S.C. §§ 3663 and 3664. That right to restitution is, therefore, not applicable in this case, there being no allegation that there is an ongoing or contemplated criminal prosecution against any defendant which would take place under Title 18 of the United States Code rather than the Uniform Code of Military Justice. Plaintiffs have, therefore, failed to allege facts which establish a right to restitution under either 42 U.S.C. § 10606 or 18 U.S.C. § 3663.

Even if Plaintiffs could establish some right to restitution under § 10606 or § 3663, a cause of action to enforce that right is barred by the very statutes to which Plaintiffs point as establishing the right. Section 10606 provides as follows: "This section does not create a cause of action . . . in favor of any person arising out of the failure to accord to a victim the

rights enumerated in subsection (b) . . . ." 42 U.S.C. § 10606(c). Section 3664 also provides as follows: Nothing in 18 U.S.C. §§ 3663 or 3664 "shall be construed to create a cause of action not otherwise authorized in favor of any person against the United States or any officer or employee of the United States." 18 U.S.C. § 3664(p). Thus, the statutory provisions on which Plaintiffs explicitly rely in their complaint make it clear that Plaintiffs may not bring a cause of action to enforce any claimed right to restitution as the victims of an un-prosecuted crime. The undersigned recommends, therefore, that defendants' motions to dismiss be **GRANTED**, and that the victims' rights claim pled in Count IV of the complaint be dismissed for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6).

### RECOMMENDATION

The undersigned recommends that the United States' motion for substitution and to dismiss be **DENIED** (doc. nos. 13–1 and 13–2); that Rear Admiral Smith's and Captain Toennies' motions to dismiss be **GRANTED** (doc. no. 14); and that the United States' motion to dismiss be **GRANTED** as to all claims except Plaintiffs' claim under the Administrative Procedures Act as to which claims the undersigned recommends that the motion be **DENIED** (doc. no. 14).

### OBJECTIONS

In accordance with 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b), a party may file specific written objections to this Report and Recommendation. Objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within 10 days of being served with a copy of this Report and Recommendation. *See*

Fed.R.Civ.P. 6 (as to computation of time periods). If specific written objections are timely filed, the district judge assigned to this case will

> make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b). *See also* 28 U.S.C. § 636(b)(1).

The Court of Appeals for the Tenth Circuit has adopted a "firm waiver rule" in connection with appeals from orders adopting a Magistrate Judge's report and recommendation. "[T]he failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property,* 73 F.3d 1057, 1059 (10th Cir.1996) (quoting *Moore v. United States,* 950 F.2d 656, 659 (10th Cir.1991)). **Thus, a timely, specific and written objection is necessary to preserve an issue for *de novo* review by the assigned district judge and for appellate review by the court of appeals.** *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Haney v. Addison,* 175 F.3d 1217 (10th Cir. 1999); and *Talley v. Hesse,* 91 F.3d 1411 (10th Cir.1996).

Dated this 14th day of May 2002.